**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DIAMOND SERVICES MANAGEMENT COMPANY, LLC and FREDERICK GOLDMAN, INC., | ) ) ) ) | |
| Petitioners | ) | Case No.: _____ |
| v. | ) | |
| | ) | Case In Other Court: *Diamond Services* |
| KNOBBE MARTENS OLSON & BEAR, LLP | ) ) | *Management Company, LLC et al. v. C&C* *Jewelry Manufacturing, Inc. et al.*, |
| | ) | Case No. 19-cv-07675 (N.D. Illinois) |
| and | ) | |
| | ) | |
| KENEALY VAIDYA, LLP | ) | |
| | ) | |
| Respondents | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS ISSUED TO KNOBBE MARTENS OLSON & BEAR LLP AND <u>KENEALY VAIDYA, LLP</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

FACTUAL BACKGROUND ...................................................................................... 2

THE SUBPOENAS ................................................................................................... 4

LEGAL STANDARD ................................................................................................ 6

ARGUMENT ............................................................................................................. 6

I.      This Court Should Compel Knobbe and KV To Produce Documents Relevant To
        The Illinois Action. ....................................................................................... 6

        a.      The Documents Sought Are Relevant to Petitioners' Claims In The Illinois
                Action. ................................................................................................ 6

        b.      The Subpoenas Present No Undue Burden Upon Knobbe and KV. ..................... 7

        c.      The Documents Withheld By Knobbe Are Not Protected By the Patent-
                Agent Privilege. ................................................................................. 9

        d.      Client Identity Is Not Protected By The Attorney-Client Privilege. .................... 10

        e.      Billing Invoices Are Not Protected By The Attorney-Client Privilege ............... 11

        f.      35 U.S.C. §§301, 302 Do Not Bar KV From Producing Relevant
                Documents. ..................................................................................... 12

CONCLUSION ....................................................................................................... 14

## POINTS OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. F.B.I.*,
    192 F.R.D. 12 (D.D.C. 2000) .................................................................................................10

*Alexander v. FBI*,
    186 F.R.D. 21 (D.D.C.1998) ..................................................................................................9

*Antor Media Corp. v. Trusonic, Inc.*,
    No. CIVA 5:06-CV-270 DF, 2009 WL 677313 (E.D. Tex. Mar. 9, 2009) ...........................13

*Berliner Corcoran & Rowe LLP v. Orian*,
    662 F. Supp. 2d 130 (D.D.C. 2009) ......................................................................................11

*BuzzFeed, Inc. v. U.S. Dep't of Just.*,
    318 F. Supp. 3d 347 (D.D.C. 2018) ....................................................................................6, 7

*Cause of Action Inst. v. United States Dep't of Just.*,
    330 F. Supp. 3d 336 (D.D.C. 2018) ......................................................................................10

*Coleman v. District of Columbia*,
    275 F.R.D. 33 (D.D.C. 2011) .................................................................................................6

*Davco Mfg. Corp. v. Peninsular Diesel, Inc.*,
    128 F.R.D. 91 (N.D. Ohio 1989) .....................................................................................12, 13

*Diamond Services Management Company, LLC and Frederick Goldman, Inc. v.*
    *C&C Jewelry Manufacturing, Inc. and Robert G. Connolly*,
    Case No. 19-cv-07675 (N.D. Ill.) ...........................................................................................2

*GFL Advantage Fund, Ltd. v. Colkitt*,
    216 F.R.D. 189 (D.D.C. 2003) ...............................................................................................8

*In re Queen's Univ. at Kingston*,
    820 F.3d 1287 (Fed. Cir. 2016) ..............................................................................................9

*United States v. BDO Seidman*,
    337 F.3d 802 (7th Cir. 2003) ................................................................................................10

*United States v. Naegele*,
    468 F. Supp. 2d 165 (D.D.C. 2007) ......................................................................................10

*Matter of Witnesses Before The Special Mar. 1980 Grand Jury*,
    729 F.2d 489 (7th Cir. 1984) ................................................................................................11

*Zenith Elecs. Corp. v. Exzec, Inc.*,
    No. 93 C 5041, 1998 WL 9181 (N.D. Ill. Jan. 5, 1998) .........................................................13

## Statutes

35 United States Code
    §301................................................................................................................................12, 13

## Other Authorities

Federal Rules of Civil Procedure
    Rule 26 ...............................................................................................................................6, 7
    Rule 45 ........................................................................................................................2, 6, 7, 8

Local Rule 7(m) ............................................................................................................................6

Petitioners Diamond Services Management Company, LLC ("Diamond") and Frederick Goldman, Inc. ("Goldman") (collectively "Petitioners"), pursuant to Federal Rule of Civil Procedure 45, respectfully move this Court for an Order compelling Knobbe Martens Olson & Bear LLP ("Knobbe" or "Knobbe Firm") and Kenealy Vaidya, LLP ("KV" or "KV Firm") to produce documents in accordance with subpoenas served on January 21, 2021 (the "Knobbe Subpoena" and the "KV Subpoena" respectively) in connection with a lawsuit currently pending in the Northern District of Illinois: *Diamond Services Management Company, LLC and Frederick Goldman, Inc. v. C&C Jewelry Manufacturing, Inc. and Robert G. Connolly*, Case No. 19-cv-07675 (N.D. Ill.).  The Knobbe Subpoena is attached as Exhibit A; the KV Subpoena as Exhibit B.  Knobbe's responses and objections to the Knobbe Subpoena are attached as Exhibit C, and KV's responses and objections to the KV Subpoena are attached as Exhibit D.

In support of this Motion, Petitioners state as follows:

## FACTUAL BACKGROUND

1. Since 2007, Petitioners Goldman and Diamond have had a worldwide exclusive license from Trent West ("West") to sell tungsten carbide jewelry rings (the "Licensed Products") manufactured under certain patents, including U.S. Patent Nos. 6,928,734 ("'734 Patent") and 7,032,314 ("'314 Patent") owned by West (collectively the "West Patents"). Goldman created Diamond as a legal entity specifically to license products related to the West Patents.

2. In 2009, C&C Jewelry Manufacturing, Inc. ("C&C") -- another jewelry manufacturer -- sued West in the Northern District of California (Case No. 09-cv-01303) seeking to invalidate the West Patents.  That case was dismissed, as West and C&C entered into a settlement (the "2011 Settlement Agreement").  As part of the 2011 Settlement Agreement, C&C was required to enter into a License Agreement with Petitioner Diamond, which granted C&C a

2

limited, non-exclusive license to sell Licensed Products to specific customers, in exchange for paying Diamond a royalty of C&C's annual net revenue relating to the sale of Licensed Products (the "License Agreement").

3.      The 2011 Settlement Agreement specifically provides that C&C would not challenge or cause to be challenged the validity, enforceability or scope of the West Patents in any court or other tribunal, including the United States Patent and Trademark Office (USPTO).

4.      The License Agreement also contains substantially similar language, which provides that C&C would not challenge or cause to be challenged the validity, enforceability or scope of the West Patents in any court or other tribunal, including the USPTO.

5.      The License Agreement is valid until the expiration of the '734 Patent.[1]

6.      On September 25, 2018 and January 8, 2019, the USPTO granted West's application for Certificate of Correction on the '734 Patent.  The Certificate of Correction extended the life of the '734 Patent until April 13, 2023.

7.      On or about April 23, 2019, Julie E. Burke, Ph.D. -- a registered patent agent at the Knobbe firm -- filed an unsuccessful Request for Certificate of Correction to the '734 Patent on behalf of an anonymous client.  (Exhibit A, 019).  Upon information and belief, C&C, through its owner Robert G. Connolly (collectively "C&C"), initiated or otherwise participated in the filing of the unsuccessful Request for Certificate of Correction in direct violation of the 2011 Settlement Agreement and License Agreement.

8.      On October 3, 2019, the USPTO issued a determination denying the Request for Certificate of Correction, therefore affirming that the '734 Patent remains in force until August 13, 2023.  (Exhibit A, 013).

---

[1] The '314 Patent has expired.

9.      On November 20, 2019, Petitioners sued C&C in the Northern District of Illinois for breach of the License Agreement, among other claims, Case No. 19-cv-07675 (N.D. Illinois) (the "Illinois Action").  The Illinois Action alleges that C&C breached the License Agreement for failure to pay royalties, for selling Licensed Products outside the scope of the License Agreement, and is therefore subject to a liquidated damages provision.  In addition, the Illinois Action alleges that C&C filed, or caused to be filed, the Request for Certificate of Correction for the '734 Patent anonymously in breach of the License Agreement.

10.     C&C has denied any wrongdoing, asserted multiple counterclaims (including counterclaims seeking to challenge the validity of the '734 Patent), and filed a partial motion to dismiss in the Illinois Action.  Petitioners recently filed a motion to dismiss all of C&C's counterclaims, including those counterclaims seeking to challenge the validity of the '734 Patent. Those cross motions are pending before the Illinois court.  While the dispositive motions are pending, the parties to the Illinois Action are currently in discovery.

11.     On or about December 30, 2020, while the Illinois Action had been pending for over one year, Petitioners learned that KV filed an *Ex Parte* Reexamination Request for the '734 Patent ("Ex Parte Request") on behalf of an anonymous client.  (Exhibit B, 013).  The Ex Parte Request seeks to invalidate the '734 Patent.

12.     To Petitioner's knowledge, no Reexamination has ever been filed for the '734 Patent at any point prior to the Illinois Action.  Petitioners believe that C&C filed, or caused to be filed, the Ex Parte Request in an attempt to circumvent the proceedings in the Illinois Action.

### THE SUBPOENAS

13.     Based on the recent filing of the Ex Parte Request, Petitioners served the Knobbe Subpoena and the KV Subpoena on January 21, 2021.  (*See* Exhibit A and Exhibit B.)

14.     The purpose of both the Knobbe Subpoena and the KV Subpoena was to confirm C&C's direct or indirect involvement with filing the Certificate of Correction and Ex Parte Request in direct violation of the 2011 Settlement Agreement and License Agreement.  Both Subpoenas included nearly identical requests: (1) document sufficient to identify the client(s) that retained the law firms; (2) billing invoices; (3) documents related to the '734 Patent, the Illinois Action, or the License Agreement; and (4) communications with C&C or their lawyers.

15.     On February 12, 2021, KV served its responses and objections.  (*See* Exhibit D.) KV denied it was in possession of any documents in connection with the Illinois Action, the License Agreement, or C&C and their attorneys.  KV, however, objected to producing any documents related to the identity of the client(s), or any billing invoices.  The objections were based primarily on (1) and assertion of the attorney client privilege; and (2) 35 U.S.C. §301 and §302.

16.     KV did not, and does not intend to, produce a privilege log.

17.     On February 16, 2021, Knobbe served its responses and objections.  (*See* Exhibit C.)  Knobbe similarly denied it was in possession of any documents in connection with the Illinois Action, the License Agreement, or C&C and their attorneys.  Knobbe also objected to producing any documents related to the identity of the client(s), or any billing invoices based primarily on an assertion of the attorney client privilege and because of unspecified agreements with another entity.

18.     Knobbe produced a privilege log identifying (1) an engagement agreement; (2) four billing invoices; and (3) draft Certificates of Correction prepared by Julie E. Burke, Ph.D.[2] (*See* Exhibit C).  Notably, the privilege log did not identify who the materials listed were sent to

---

[2] Petitioners do not seek to compel copies of the draft Certificates of Correction.

and stating only that certain withheld materials were sent to "client confidential." (*See id*. at 008).

19.     Pursuant to Local Rule 7(m), Counsel for Petitioners have met and conferred with counsel for both Knobbe and KV after they served their respective responses and objections in an effort to narrow the scope of the dispute. Neither Knobbe nor KV intends to produce any documents that identify the client(s), nor do they intend to produce any billing invoices. This action is therefore necessary to enforce the Subpoenas. Knobbe and KV intend to oppose this Motion.

## LEGAL STANDARD

Fed.R.Civ.P. 45 governs the use of subpoenas to secure documents from third parties that are relevant to pending litigation. Fed.R.Civ.P. 45 is informed by Fed.R.Civ.P. 26, which governs civil discovery. *Coleman v. District of Columbia,* 275 F.R.D. 33, 36 (D.D.C. 2011). Fed.R.Civ.P. Rule 26 provides, in relevant part, that a party can obtain non-privileged information in discovery that is relevant to any party's "claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action…"

"The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged." *BuzzFeed, Inc. v. U.S. Dep't of Just.,* 318 F. Supp. 3d 347, 356 (D.D.C. 2018).

## ARGUMENT

I.     **THIS COURT SHOULD COMPEL KNOBBE AND KV TO PRODUCE DOCUMENTS RELEVANT TO THE ILLINOIS ACTION.**

   a.     ***The Documents Sought Are Relevant to Petitioners' Claims In The Illinois Action.***

Petitioners seek to compel only two categories of information that are directly relevant to the Illinois Action: (1) the identity of the client(s) who retained Knobbe and KV in connection

with services performed for the 2019 Request for Certificate of Correction, and 2020 Ex Parte

Request; and (2) the billing invoices covering the same.  The client(s) information is necessary to

determine if C&C or its agents were directly or indirectly involved with challenging the validity,

enforceability or scope of the '734 Patent through the USPTO actions.  If such information

confirmed its involvement, then C&C would be in direct breach of their contractual obligations

to Diamond, the subject of which is actively being litigated in the Illinois Action.

 In addition to information related to client identity, the billing invoices would allow

Petitioners to determine whom Knobbe and KV personnel may have communicated with in

connection with the filing the Request for Certificate of Correction and Ex Parte Request.  The

responsive information would also allow Petitioners to conduct further investigation as necessary

to determine the person or persons ultimately responsible for initiating the proceedings before

the USPTO.

  **b.**  ***The Subpoenas Present No Undue Burden Upon Knobbe and KV.***

 The information sought by Petitioners is neither overly broad nor unduly burdensome.

The "undue burden" standard under Fed.R.Civ.P. 45 requires the Court to determine if the

subpoenas impose unnecessary costs or burden upon the third parties.  *BuzzFeed, Inc. v. U.S.*

*Dep't of Just.*, 318 F. Supp. 3d 347, 358 (D.D.C. 2018).  Factors that inform this determination

include (1) whether discovery sought is cumulative or duplicative; (2) whether discovery can be

obtained from another source; (3) whether discovery is "proportional" to the case considering the

factors set forth under Fed.R.Civ.P. 26.  *Id.*

 Here, the Knobbe Subpoena and KV Subpoena are targeted to be limited in scope and do

not seek cumulative or duplicative information.  The Knobbe Subpoena seeks information

pertinent to the 2019 Request for Certificate of Correction; the KV Subpoena seeks information

concerning the 2020 Ex Parte Request.  Petitioners estimate that Knobbe and KV would only be

required to produce less than five readily identifiable documents each.  As demonstrated by Knobbe's own privilege log, Knobbe is currently withholding (a) an engagement letter; and (b) four invoices to the anonymous client.  (*See* <u>Exhibit C</u>, 008**).  Petitioners do not seek any further information beyond this limited set of documents.  While KV has not produced a privilege log, KV can similarly produce an engagement letter and billing invoices concerning the Ex Parte Request in response to the KV Subpoena without any undue burden or hardship.[3]  There is no reason to believe that the KV billing invoices would be voluminous since KV only filed the Ex Parte Request on December 30, 2020.

Such a limited set of documents is not only proportional to the needs of the Illinois Action, but it also cannot be obtained from another source since Knobbe and KV were directly involved with the request for Certificate of Correction and Ex Parte Request respectively.  As third parties to the Illinois Action, it is even more important that Knobbe and KV produce these limited documents so that Petitioners can verify whether C&C has breached the License Agreement, or has improperly attempted to circumvent proceedings in the Illinois Action.[4]

---

[3] Fed.R.Civ.P. 45(d)(2) provides, in relevant part, that if a claim of privilege is made, the party "must expressly make the claim" and "describe the nature of the withheld documents…in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."  The rule is "obviously mandatory" and failure to strictly adhere to Rule 45 is "deemed to waive the underlying privilege claim."  *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 195 (D.D.C. 2003)(citation omitted).

[4] To the extent Knobbe or KV purport to raise concerns about the confidentiality of the responsive documents, the Court in the Illinois Action has already entered an agreed-to Protective Order to ensure that any information produced in response to the Subpoenas would be used solely for the Illinois Action.  Accordingly, the information produced in response to the Subpoenas would be subject to the Protective Order.  Counsel for Petitioner has previously provided Knobbe with a copy of that Protective Order and represented that it had no objection to materials being produced and treated pursuant to that Protective Order.

c.      *The Documents Withheld By Knobbe Are Not Protected By the Patent-Agent Privilege.*

While the Knobbe firm objected to the Knobbe Subpoena based on the attorney-client privilege, the attorney client privilege does not apply to the withheld documents because Julie E. Burke, Ph.D. is not an attorney, but a registered patent agent. (Exhibit A, 022). The applicable privilege, which Knobbe has not specifically raised, is the patent agent privilege.[5] The District of Columbia has not yet adopted the patent agent privilege, but the Federal Circuit has done so. *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1301–02 (Fed. Cir. 2016). The patent agent privilege, however, must be construed narrowly to communications that relate to the patent agent's practice before the USPTO. This includes "preparing and prosecuting any patent application" or "interference, reexamination proceeding, petition, appeal to or any other proceeding before the Patent Trial and Appeal Board, or other proceeding." *Id.* at 1301 *(citing* 37 C.F.R. §11.5(b)(1)). "Communications that are not reasonably necessary and incident to the prosecution of patents before the Patent Office fall outside the scope of the patent-agent privilege." *Id.*

Here, neither the engagement letter nor the billing invoices relate to Dr. Burke's practice before the USPTO, even if the identity of the client(s) and the billing invoices are construed as "communications." The engagement letter was not necessary or incident to the preparation of the Request for Certificate of Correction since Dr. Burke filed it on behalf of the anonymous client(s). The billing invoices generally record the time and description of the work performed, which is generated after the work has already been completed, and the Request for Certificate of Correction publicly filed.

---

[5] Failure to timely object to a subpoena may be deemed waiver of that objection. *Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C.1998)(citations omitted).

Accordingly, the patent agent privilege does not protect the disclosure of the engagement letter and billing invoices that Knobbe is currently withholding.  This Court should compel their production.

    ***d.    Client Identity Is Not Protected By The Attorney-Client Privilege.***

Assuming Knobbe and KV have properly invoked the attorney client privilege, the privilege still does not protect the identity of the client(s).  The purpose of the attorney-client privilege is to encourage "full and frank communication" between an attorney and client, but the privilege must be "strictly construed within the narrowest possible limits" consistent with this principle.  *Alexander v. F.B.I.*, 192 F.R.D. 12, 16 (D.D.C. 2000).  As such, the attorney client privilege generally does not protect the client's identity under either Illinois or District of Columbia law.  *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003) (ordinarily the identity of a client does not come within the scope of the attorney/client privilege); *United States v. Naegele*, 468 F. Supp. 2d 165, 171 (D.D.C. 2007)(*quoting Chaudhry v. Gallerizz*o, 174 F.3d 394, 402 (4th Cir.1999))("The identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege.").  A limited exception to this rule applies under both Illinois and District of Columbia law: a client's identity may be privileged if disclosure of that identity also discloses actual motive or other confidential information.  *BDO Seidman,* 337 F.3d at 811; *Cause of Action Inst. v. United States Dep't of Just.*, 330 F. Supp. 3d 336, 350 (D.D.C. 2018).

Here, Petitioners are seeking the identities of the client(s) who retained Knobbe and KV to file the Request for Certificate of Correction and Ex Parte Request respectively, which are plainly not protected under applicable Illinois or District of Columbia law.  And the limited exception, identified above, does not apply.  The disclosure of the client identity would not

reveal any confidential information since the motivation of the Request for Certificate of

Correction and Ex Parte Request is already public: to challenge the validity of the '734 Patent.

Significantly, Petitioners are not seeking to compel any *actual* communications between patent

agent or counsel and their respective clients, but only the identity of the client(s) who retained

the law firms to file the USPTO actions, which are a matter of public record.

Accordingly, this Court should compel Knobbe and KV to respond to Request No. 1 of

the Subpoenas.

> **e.** **Billing Invoices Are Not Protected By The Attorney-Client Privilege.**

Neither the District of Columbia nor Illinois recognizes a blanket attorney client privilege

over attorney billing invoices.  Instead, much like information concerning client identity, the

"weight of the authority holds that communications relating solely to the payment of attorneys'

fees are not covered by the attorney-client privilege unless they reveal confidences about the

nature of legal services rendered."  *Berliner Corcoran & Rowe LLP v. Orian*, 662 F. Supp. 2d

130, 134 (D.D.C. 2009); *Matter of Witnesses Before The Special Mar. 1980 Grand Jury*, 729

F.2d 489, 491 (7th Cir. 1984)(billing statements privileged only if reveal confidential

communication between the attorney and client).

In this case, Petitioners are not seeking any information from the billing invoices that

would reveal any confidential client communications.  Knobbe and KV are free to redact any

such information that would constitute confidential communications.  Rather, Petitioners are

only seeking to determine if personnel at Knobbe and KV may have communicated with other

individuals in connection with the Request for Certificate of Correction and Ex Parte Request,

which can be linked directly or indirectly to C&C.  The identity of any such individuals would

allow Petitioners to determine if C&C may have employed intermediaries to file the USPTO

actions on its behalf.  Therefore, it is essential that Petitioners obtain the billing invoices to further their investigation into their claims that are relevant to the Illinois Action.

For these reasons, the Court should compel Knobbe and KV to response to Request No. 2 in the Subpoenas.

> ### f.      35 U.S.C. §§301, 302 Do Not Bar KV From Producing Relevant Documents.

Finally, KV has objected on the basis of 35 U.S.C. §301[6] ("Citation of prior art and written statements") and §302 ("Request for reexamination") to withhold the disclosure of the client identity and billing invoices, relying primarily on *Davco Mfg. Corp. v. Peninsular Diesel, Inc.*, 128 F.R.D. 91, 92 (N.D. Ohio 1989).  *Davco Mfg. Corp.*, however, is readily distinguishable on the facts and does not apply to the circumstances of this case.

In *Davco Mfg. Corp.,* the Ohio Court denied the defendant's motion to compel the plaintiff to answer to an interrogatory about the plaintiff's involvement with a reexamination request.   The Ohio Court determined, primarily, that the information sought was not relevant. In addition, it found that there is a public policy right to confidentiality afforded in the reexamination process under 35 U.S.C. §§301, 302, which outweighed the plaintiff's need for that information since the plaintiff did not establish that the information sought was relevant to its claims.  The Ohio Court, however, specifically noted that it "can imagine instances where the right of confidentiality afforded in the reexamination process could be overcome by compelling reasons offered by the moving party."  *Id.* at 93.

---

[6] "35 U.S.C. §301(e) states in pertinent part:

> Upon the written request of the person citing prior art or written statements pursuant to subsection (a), that person's identity shall be excluded from the patent file and kept confidential.

Courts that have since examined *Davco Mfg. Corp.* have determined that a finding of relevance overcomes the confidentiality policy underlying 35 U.S.C. §301 based on a balancing test. *Zenith Elecs. Corp. v. Exzec, Inc.*, No. 93 C 5041, 1998 WL 9181, at *3 (N.D. Ill. Jan. 5, 1998)("A determination of direct relevance weighs in favor of disclosure." (citation omitted))*; Antor Media Corp. v. Trusonic, Inc.*, No. CIVA 5:06-CV-270 DF, 2009 WL 677313, at *1 (E.D. Tex. Mar. 9, 2009)(distinguishing *Davco* and granting motion for reconsideration to allow plaintiff to discover the defendant's involvement with ex parte reexamination because it was relevant to determine motion for stay).

Unlike *Davco Mfg. Corp.,* the identity of the client(s) that filed, or caused to be filed, the Ex Parte Request in this case is directly relevant to Petitioner's breach of contract claim pending against C&C.  The relevance of the information, therefore, weighs in favor of disclosure.

Indeed, C&C is contractually prohibited from challenging the validity, enforceability or scope of the '734 Patent.  Petitioners have filed the Illinois Action against C&C, in part, because Petitioners allege that C&C filed, or caused to be filed, the 2019 Request for Certificate of Correction notwithstanding the explicit prohibition in the License Agreement.  Despite the contractual prohibitions, C&C has also openly challenged the validity, enforceability or scope of the '734 Patent in the Illinois Action, which is being actively litigated.  While the Illinois Action has been pending, Petitioners then learned that KV filed the Ex Parte Request of the '734 Patent on behalf of an anonymous client, which could have a direct impact on the Illinois Action.

In short, Petitioners' need for the client(s) identity to confirm C&C's link to the Ex Parte Request greatly outweighs the anonymous client(s)'s right to maintain confidentiality.  This is especially the case because the client identity is highly relevant to Petitioners' breach of contract claim against C&C in the Illinois Action.

## **CONCLUSION**

For the reasons set forth above, Petitioners respectfully request that this Court grant their Motion and enter an Order compelling both Knobbe Martens Bear & Olson LLP and Kenealy Vaidya, LLP to respond to their respective subpoenas and produce (a) the client(s) engagement letters; and (b) billing invoices in connection with the Request for Certificate of Correction and Ex Parte Request.

Dated: March 26, 2021                                DENTONS US LLP

By: /s/  *Drew W. Marrocco*
Drew W. Marrocco (DC Bar # 453205)
**DENTONS US LLP**
1900 K Street NW
Washington, DC 20006
(202) 408-6387
drew.marrocco@dentons.com

Leah R. Bruno (*pro hac vice to be submitted*)
**DENTONS US LLP**
233 S. Wacker Drive, Suite 5900
Chicago, IL  60606
(312) 876-8000
leah.bruno@dentons.com

Tony K. Lu (*pro hac vice to be submitted*)
**DENTONS US LLP**
One Beacon Street, Suite 25300
Boston, MA 02108
(617) 235-6817
tony.lu@dentons.com

*Attorneys for Petitioners Diamond Services Management Company, LLC and Frederick Goldman, Inc.*

14

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 26th day of March, 2021, a true copy of the

foregoing, **MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLIANCE**

**WITH SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS ISSUED TO**

**KNOBBE MARTENS OLSON & BEAR LLP AND KENEALY VAIDYA, LLP,** was served

upon the following via US Mail and electronic mail:

Wendy Peterson, Esq.
Jason Champion, Esq.
Knobbe, Martens, Olson & Bear LLP
1717 Pennsylvania Avenue N.W.
Suite 900
Washington, DC 20006
Wendy.peterson@knobbe.com
Jason.champion@knobbe.com

Ajit I. Vaidya, Esq.
Kenealy Vaidya, LLP
3000 K. Street, NW
Suite 200
Washington, DC 20007
avaidya@kviplaw.com

/s/      Drew W. Marrocco
*One of the attorneys for Petitioners*
*Diamond Services Management Company, LLC*
*and Frederick Goldman, Inc.*

117134875\V-4